UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
SHANNON KELLY,                                                 :
                                                               :
                                  Petitioner,                  :    **MEMORANDUM**
                                                               :    **DECISION AND ORDER**
                  - against -                                  :
                                                               :    CV-08-2179 (BMC)(LB)
D.F. NAPOLI, Superintendent,                                   :
                                                               :
                                  Respondent.                  :
                                                               :
                                                               :
-------------------------------------------------------------- X

**COGAN, District Judge.**

This is a habeas corpus case brought under 28 U.S.C. §2254 in which petitioner raises a single claim: although the jury convicted him of one count of felony murder and four counts of weapons possession, the sentencing judge, according to petitioner, in orally imposing the sentence, neglected to impose any sentence for the felony murder count and instead imposed sentence only for the weapons possession counts. Petitioner would of course have no problem with that except that the term of custody that the judge imposed exceeded the permissible term for the weapons possession convictions, and could only be justified as a sentence for felony murder, upon which, again, petitioner asserts that the judge did not sentence him.

Petitioner's claim is based on an out-of-context reading of one phrase in the sentencing transcript. Considered in its entirety, the sentencing minutes show that the judge imposed a felony murder term for the felony murder conviction, and weapons possession terms for the weapons possession convictions. Accordingly, the petition is denied.

## BACKGROUND

Petitioner was one of a group of four perpetrators, the others being Arthur Brodie, Robert Brodie, and Michael Sennon, who robbed a convenience store in 1986. During the robbery, Robert Brodie fatally shot the 18-year old store clerk. Petitioner also had a loaded gun during the robbery which discharged, apparently not hitting anyone, as the robbers fled. In 1987, a jury convicted petitioner of one count of felony murder (N.Y. Penal Law §125.25[3]); two counts of second degree criminal possession of a weapon (N.Y. Penal Law §265.03); and two counts of third degree criminal possession of a weapon (N.Y. Penal Law §265.02[4]).

At the sentencing hearing on December 15, 1987, the prosecution argued for the maximum sentence for the felony murder conviction, twenty-five years to life. In response, petitioner's counsel urged the judge to take into account the fact that petitioner was not the perpetrator who had fired the fatal shot. The sentencing judge did not find that argument persuasive. He stated:

> [T]he fact that [petitioner] had the gun and he didn't fire it really just proves one thing to me, that the gun was operable, and that concerned me. We don't know if Mr. Sennon's – strike that – Mr. Arthur Brodie's gun was operable because it never was fired, but there was testimony that he had a gun. With your guy, because there was an accident and he tripped trying to get out, whatever it was how this happened, the gun went off. Although it didn't kill or hurt anyone, we know the gun was operable, and so what that says to me in terms of the other evidence in the case, he certainly was in on the planning of the robbery.
>
> It says to me that he certainly knew that he was going in with a loaded gun, and that is what the felony murder statute is for, to protect against these kind of things. ...
>
> He was very intimately involved with this case. I would say besides [Robert] he was more intimately involved with this robbery than the other defendants. He has to pay for that, and will do that by serving a maximum sentence of 25 years to life on the possession of the gun, his gun, second degree; seven and a half to 15, the possession of Mr. Brodie's gun, acting in concert; possession second degree, six to 12, his gun; possession third degree, to

2

maximum, three and a half to seven; and, on Mr. Brodie's gun possession third
degree, three to six.

The judge stated that sentences would run concurrently to each other and consecutively to a sentence that petitioner was serving in another case.

The judgment and commitment form stated petitioner's sentence as twenty-five years to life on the felony murder count, seven and one-half to fifteen years and six to twelve years on the two counts of second degree weapons possession, and three and one-half to seven years and three to six years on the two counts of third-degree weapons possession.

Petitioner appealed his conviction on grounds not involved here. In his appellate brief, petitioner never questioned and indeed acknowledged that his twenty-five years to life sentence had been imposed on the felony murder count. The Appellate Division affirmed the conviction. On September 19, 2001, Judge Korman dismissed on the merits petitioner's first habeas corpus petition in this Court, which again did not raise the issue involved here, and the Second Circuit denied a certificate of appealability on December 19, 2002. See Kelly v. Goord, No. 97-cv-02601 (ERK).

On April 16, 2007, petitioner filed a motion in state court under N.Y. Crim. Pro. L. §440.20, challenging his sentence on the ground raised here; namely, that the sentencing judge had only sentenced him for weapons possession, and those charges could not support a sentence of twenty-five years to life. Petitioner relied on the clause, "[h]e has to pay for that, and will do that by serving a maximum sentence of 25 years to life on the possession of the gun, his gun, second degree..." The §440 Court denied his motion, stating that:

> The plain language of this statement by the sentencing court lends itself to the interpretation that defendant was sentenced to twenty-five years to life on a weapons charge. However, as the People demonstrate, this excerpt comes after a discussion of defendant's conviction under the felony murder statute. A reading

3

of the entire sentencing transcript makes clear that the court was sentencing
defendant to twenty-five years to life on his Murder in the Second Degree
conviction. ...

The full sentencing transcript, when read in context, leaves no ambiguity
regarding what sentence was imposed on defendant. The sentencing court's
paperwork [i.e., the written judgment] further underscores the lawful nature of the
sentence imposed.

The Appellate Division affirmed without opinion.

Petitioner then moved in the Second Circuit for leave to file a second or successive habeas corpus petition. The Circuit denied the motion as unnecessary, and transferred the motion to this Court, with directions to provide petitioner with the form for filing a §2254 petition.[1] Petitioner thereupon filed this case, raising the same issue as in his §440 proceeding.

## DISCUSSION

### I. Standard of Review

A federal habeas court may overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but

---

[1] The Circuit cited James v. Walsh, 308 F.3d 162, 168 (2d Cir. 2002), apparently reasoning that petitioner's claim did not arise until he completed service of his 15 year weapons possession sentence, and thus he could not have raised, or at least did not have to raise, the claim as part of his first habeas corpus petition.

4

unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. An unreasonable application is more incorrect than a merely erroneous one, Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (citing Williams, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," Gilchrist, 260 F.3d at 93 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

This limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

**II. Analysis**

Petitioner, citing Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936), relies on the well-established due process principle that a sentence must be orally pronounced in open court, and that if a later written judgment adds terms or increases the sentence, the oral sentence controls. See, e.g., U.S. v. Daddino, 5 F.3d 262, 265 & n.5 (2d Cir. 1993). For petitioner, the issue is simple: since the sentence (in the grammatical sense, not the penal sense) uttered by the court in which the term of twenty-five to life appears referred only to weapons possession, then there was no sentence (in the penal sense) for felony murder, and petitioner could not serve more than fifteen years for the weapons possession.

However, the custodial sentence imposed by the Court does not consist of the isolated snippet that petitioner has excerpted. A penal sentence need not be contained in a single grammatical sentence. Although petitioner's excerpted clause, standing alone, supports his view

5

(as the §440 Court noted), the overall context of the entire transcript leaves no doubt that the Court imposed twenty-five years to life for felony murder, not for weapons possession.

In U.S. v. Osborne, 345 F.3d 281 (4th Cir. 2003), the sentencing court stated that it intended to impose a guideline sentence, and then orally imposed a time period that was eight months less than the guidelines. The Court of Appeals nevertheless upheld the longer term contained in the written judgment, reasoning that

> [b]ecause the sentencing transcript indicates that the district court adopted the guideline sentencing range and recognized that there was no basis for a downward departure, we view the 180-month orally pronounced sentence as ambiguous. In light of this ambiguity, we shall look to the written criminal judgment as evidence of the sentencing court's intent.

Id. at 283 n.1.

Similarly, in U.S. v. Pagan, 785 F.2d 378 (2d Cir. 1986), the Court stated that if a special assessment was mandatory, it would be imposed, but it said it would look at that issue after sentencing and did not orally impose it. When the defendant challenged the inclusion of the special assessment in the written judgment, the Second Circuit held that "the oral pronouncement regarding special assessments, taken as a whole, was ambiguous", and that "it was not improper for the court to resolve that ambiguity in the judgment...". Id. at 380.

Cases like Osborne and Pagan illustrate that the "oral sentence of the court" is not limited to the particular phrase stating the amount of time to be served. The court's reasoning on the record can be consulted as part of the sentence that has been imposed if there is any question as to the court's intent; the court's sentencing pronouncement must be "taken as a whole." Pagan, 785 F.2d at 380. Moreover, if the written judgment can be consulted to resolve any ambiguity in the sentence, as these cases hold, then it obviously is proper to review the entire transcript of the proceeding to resolve any ambiguity.

In the instant case, there is no need to consult the written judgment because, reviewing the sentencing minutes as a whole, there is no doubt that the Court imposed a sentence of twenty-five years to life for the felony murder count. The focus of the sentencing minutes was whether it was a mitigating factor as to the felony murder conviction that petitioner did not shoot the fatal shot, so that, as his counsel argued, he should not get the maximum sentence. The Court simply indicated its rejection of that argument – on the ground that petitioner possessed his own loaded and operable gun and thus was equally culpable – in the same grammatical sentence in which it imposed the maximum penal sentence by tying it to petitioner's possession of a loaded gun during the felony murder. Petitioner is correct that the conflation and oral expression of these two thoughts raised an ambiguity, but it is easily resolved upon review of the entire sentencing transcript.

Even if that review is limited to the single grammatical sentence upon which petitioner relies, without reference to the rest of the sentencing minutes, the same conclusion is still inescapable. That grammatical sentence included not only petitioner's chosen clause, but four other clauses, in which the court imposed sentence on each weapons possession count one by one. Since all four of the weapons possession counts were disposed of separately in those four clauses, it is obvious that the clause upon which petitioner relies disposed of something else – and there was nothing else except the top count for felony murder.

Petitioner's interpretation would mean that he was sentenced twice and conflicting terms imposed for one of the weapons possessions counts in the very same grammatical sentence, an absurd result.[2] It would be equally absurd to construe the sentence imposed as inexplicably

---

[2] I place no weight on the written judgment because, consistent with state practice, it was prepared and signed by the Clerk, and the record contains no indication that the sentencing judge reviewed or adopted it. It therefore cannot be an indicator of the sentencing judge's intent. If the written judgment was in fact entered by the Clerk and conflicted

7

omitting or neglecting to mention the felony murder conviction when the minutes show it was the focus of the discussion; it was the lead count of which petitioner was convicted; and it was the only count that could support the sentence that the sentencing court imposed.

Finally, it should be remembered that the issue here is not the proper interpretation of the sentencing minutes. The issue is whether the Appellate Division's decision affirming the §440 Court was contrary to or an unreasonable application of Supreme Court authority. If petitioner's interpretation was right, and the sentencing court actually failed to impose any sentence for felony murder, then the Appellate Division's decision would be contrary to Wampler. But where there are, at the very least, more than ample grounds for interpreting the sentence imposed as the Appellate Division interpreted it, I cannot find that its decision was contrary to or an unreasonable application of Wampler.

## CONCLUSION

The petition is denied. A certificate of appealability will not issue because petitioner has failed to make a substantial showing of the denial of a federal right. See 28 U.S.C. § 2253.

**SO ORDERED.**

/Signed by Judge Brian M. Cogan/

Dated: Brooklyn, New York
October 8, 2008

---

with or augmented the oral sentence, it would violate the Second Circuit's interpretation of Wampler as set forth in Earley v. Murray, 451 F.3d 71 (2d Cir. 2006). As noted above, however, I find that the written judgment is fully consistent with the oral sentence.